**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

BENJI D. REED,

                              Plaintiff,

        - v -                             Civ. No. 9:10-CV-1449
                                                      (LEK/RFT)

G. TERBUSH;[1] GRIFFIN; M. HETCHER; D. VENETTOZZI,

                              Defendants.

**APPEARANCES:**                                    **OF COUNSEL:**

BENJI D. REED
*Pro se* Plaintiff
04-B-3302
Southport Correctional Facility
P.O. Box 2000
Pine City, NY 14871

HON. ERIC SCHNEIDERMAN                 RACHEL M. KISH, ESQ.
Attorney for Defendants                        Assistant Attorney General
Attorney General of the State of New York
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

    *Pro se* Plaintiff Benji D. Reed, while incarcerated at Eastern Correctional Facility, filed this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that his

---

[1] The correct spelling of Defendant's last name is Ter Bush. The Court will use the correct spelling of Defendant's last name throughout this opinion.

constitutional rights were violated under the First and Fourteen Amendments. *See generally* Dkt. No. 14, First Am. Compl. On September 11, 2014, Plaintiff filed his Third Amended Complaint, the operative pleading in this action. Dkt. No. 82. On November 21, 2014, Defendants moved for summary judgment. Dkt. No. 98. On December 15, 2014, Plaintiff submitted a number of filings in response to Defendants' Motion for Summary Judgment. Dkt. Nos. 104, 104-1, 104-2, 104-3, 104-4, 104-5, 104-6, & 104-7.[2] On December 29, 2014, Plaintiff additionally filed a Supplemental Response in opposition.[3] Dkt. No. 108.

## I. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment

---

[2] Prior to these filings, Plaintiff filed a Response, Dkt. No. 103, which differed ever so slightly from the submissions noted above. Consequently, the Court issued a Text Order striking Dkt. No. 103 from the Docket. Dkt. No. 106 Text Order, dated Dec. 16, 2014.

[3] Defendants did not file a Reply.

on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all

ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Material Facts

There are no issues of material fact. Plaintiff is an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), and at all times relevant to this action he was housed at Eastern Correctional Facility.

On October 19, 2010, during a routine cell search, a number of unauthorized items were discovered in Plaintiff's cell. Dkt. No. 98-5, Ex. C at p. 6, Inmate Misbehavior Report, dated Oct. 19, 2010. As a result, an inmate misbehavior report was issued and Plaintiff was charged with possessing Uniform Commercial Code ("UCC") materials, contraband, altered items, and stolen state property. *Id.* That same day, Plaintiff was placed in pre-hearing confinement in the Special Housing Unit ("SHU"). Dkt 98-5, Ex. C at p. 3, Superintendent Hr'g Disposition Rendered, dated Nov. 3, 2010. The next day, October 20, 2010, at 9:03 a.m., Plaintiff was served with a copy of the misbehavior report, which outlined the formal charges that were pending against him and a "Description of the Incident" that stated, in part, that "the following items of contraband were recovered: 1 large stack of Uniform Commercial Code materials . . . UCC Financing statements and financing statement addendums. . . . All of the Contraband was placed in the West Wing Court Office." Dkt 98-6, Ex. D, Tier III Hr'g Tr., dated Aug. 28, 2012, at pp. 1-2; Dkt. No. 104, Benji Reed Decl., dated Dec. 7, 2014, at ¶ 18; Dkt. No. 98-5, Ex. C at p. 6, Inmate Misbehavior Report.

Defendant Michael Hetcher is employed by DOCCS as a Correctional Officer at Eastern and his responsibilities include conducting an "unpack" of inmate property when an inmate is transferred to SHU for disciplinary reasons. Dkt. No. 98-15, Michael Hetcher Decl., dated Nov. 6, 2014, at ¶¶ 1 & 9. On October 20, 2010 and

October 21, 2010, during a SHU unpack, Defendant Hetcher and three other DOCCS employees conducted a search of Plaintiff's personal property and seized 210 pages of UCC material, which were turned over to Captain Ramirez.[4] *Id.* at ¶¶ 10-11. Plaintiff received an undated contraband receipt signed by Defendant Hetcher, which stated that "approx 210 pages of UCC Material" had been confiscated from his cell on "10-20 to 10-21." Dkt. No. 98-8, Ex. F, Contraband Receipt.

Correctional Officer Myer[5] was assigned to assist Plaintiff with his pending Tier III disciplinary hearing and, on October 20, 2010, provided him with the various documents he had requested. Dkt. No. 98-5, Ex. C at p. 8, Assistant Form, dated Oct. 20, 2010. Plaintiff did not ask Meyer to produce any witnesses on his behalf. *Id.*

Defendant Gary Ter Bush was Eastern's Assistant Deputy Superintendent of Programs and regularly conducted Tier III disciplinary hearings at the Facility, and presided over Plaintiff's disciplinary hearing. Dkt. No. 98-16, Gary Ter Bush Decl., dated Nov. 18, 2014, at ¶¶ 2 & 4; Dkt. No. 98-6, Ex. D, Tier III Hr'g Tr. at pp. 1 & 14.

Plaintiff's Tier III disciplinary hearing commenced on October 22, 2010, and resumed on November 3, 2010. Dkt. No. 98-6, Ex. D, Tier III Hr'g Tr. at pp. 1 & 14. On October 22, 2010, Plaintiff stated on the record that he would like to call on Correctional Officer Miller as a witness, the correctional officer who issued the

---

[4] Captain Ramirez is not a defendant in this action.

[5] Officer Meyer is not a defendant in this action.

misbehavior report, and present documentary evidence "[d]ealing with the charge of possession of UCC materials." *Id.* at p. 3. Plaintiff also advised Defendant Ter Bush that he was using the UCC materials to draft legal documents that he planned on filing to vacate his underlying criminal convictions on the basis of lack of personal jurisdiction.[6] *See id.* at pp. 8 & 10-11. Defendant Ter Bush adjourned the hearing to secure Correctional Officer Miller as a witness for Plaintiff. *Id.* at p. 14.

On November 3, 2010, Plaintiff's Tier III disciplinary hearing resumed and Miller appeared *via* telephone; but, Plaintiff declined to introduce Miller as a witness or ask that any questions be posed to him. *Id.* at pp. 15-19. Plaintiff, however, introduced one "page of People versus Benji D. Reed" as evidence and asked Ter Bush to read an excerpt from the opinion where he challenged the jurisdiction of the criminal trial court. *Id.* at p. 17. Before closing the hearing, Ter Bush asked Plaintiff if he had any further testimony or documentation that he wished to submit. *Id.* at p. 18. Plaintiff replied, "No I just . . . object to the hearing because . . . you don't know the law or what I'm saying as far as like my constitutional rights[.]" *Id.* Defendant Ter Bush asked if he had "any other procedural objections[.]" Plaintiff replied, "No sir." *Id.* Upon concluding the hearing, Defendant Ter Bush found Plaintiff guilty of all the

---

[6] According to Plaintiff, because he is "not a corporate entity" and his "rights derive from the international treaty," "[t]he whole [criminal] court system. . . . It's illegitimate as applied to [him]." Dkt. No. 98-6, Ex. D, Tier III Hr'g Tr., dated Aug. 28, 2012, at pp. 8 & 11. However, Plaintiff was born in Utica, New York and spent the "majority" of his life in the United States. *Id.* at p. 9.

charges and sentenced him to six months in SHU, which was set to expire on May 3, 2011. *Id.* at p. 20; Dkt. No. 98-5, Ex. C at p. 3, Superintendent Hr'g Disposition Rendered. Up to that point, Plaintiff had completed sixteen days of pre-hearing confinement in SHU. Dkt. No. 98-6, Ex. D, Tier III Hr'g Tr. at p. 20. Plaintiff received Ter Bush's written disposition, which stated that Ter Bush was relying on the October 19, 2010 inmate misbehavior report and Reed's testimony as evidence of his misconduct. *Id.*; Dkt. No. 98-5, Ex. C at pp. 3-4, Superintendent Hr'g Disposition Rendered.

Plaintiff appealed Ter Bush's disposition to DOCCS Commissioner.[7] Dkt. No. 98-17, Donald Venettozzi Decl., dated Nov. 10, 2014, at ¶ 14. On December 31, 2010, on the Commissioner's behalf, Defendant Venettozzi[8] affirmed Defendant Ter Bush's determination, concluding that "the charging officer's conclusions were supported by substantial evidence and that the hearing officer had conducted a proper review of the evidence presented at the hearing, asked appropriate questions, and considered all evidence presented to him, including plaintiff's testimony." *Id.* at ¶ 17; Dkt. No. 98-5, Ex. C at p. 2, Review of Superintendent's Hr'g, dated Dec. 31, 2010.

---

[7] DOCCS Commissioner is not a defendant in this action.

[8] Defendant Donald Venettozzi is employ by DOCCS in the Special Housing/Inmate Disciplinary Program. Dkt. No. 98-17, Donald Venettozzi Decl., dated Nov. 10, 2014, at ¶¶ 1-2.

## C. Due Process

The Due Process Clause of the Fourteenth Amendment protects against restraints or conditions of confinement that "exceed[] the sentence in . . . an unexpected manner[.]" *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To state a due process claim under § 1983, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). However, because the Defendants do not address whether Plaintiff has a protected liberty interest, the Court turns to the crux of Plaintiff's due process claim: whether Plaintiff was provided with a fair and impartial hearing officer at his Tier III disciplinary hearing.

An inmate at a prison disciplinary hearing is entitled to the following: (1) advanced written notice of the charges — at least twenty-four hours prior to the hearing; (2) the opportunity to appear at the hearing, to call witnesses, and to present rebuttal evidence; and (3) a written statement as to the evidence relied upon and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974); *see also Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986).

Here, Plaintiff does not allege that he had inadequate notice of his disciplinary hearing nor was unable to appear at the hearing, present witnesses, or submit favorable evidence. But Plaintiff does contend that he was deprived of a fair and impartial

hearing officer. Third Am. Compl. at ¶¶ 52 & 114.

### *1. Fair and Impartial Hearing Officer*

While an inmate is *not* entitled to a hearing officer with the same level of impartiality required by judges, he is entitled to a hearing untainted by arbitrary or pre-determined findings of guilt. *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989). Nonetheless, a hearing officer's limited impartiality requirements are satisfied where the record contains "some evidence" to support the officer's findings. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached[.]" *Id.* at 455-56 (citations omitted). A written misbehavior report can satisfy the "some evidence" standard. *Creech v. Schoellkoph*, 688 F. Supp. 2d 205, 214 (W.D.N.Y. 2010) (citing *Foster v. Coughlin*, 76 N.Y.2d 964, 966 (1990), for the proposition that "[a] written misbehavior report can constitute substantial evidence of an inmate's misconduct"). That being said, only "'reliable' evidence can constitute 'some evidence.'" *Sira v. Morton*, 380 F.3d 57, 76 (2d Cir. 2004) (citing *Luna v. Pico,* 356 F.3d 481, 488 (2d. Cir. 2004)).

Here, the inmate misbehavior report was written by the officer personally

involved in the October 19, 2010 cell search, and is based on that officer's firsthand observation; and, there is no evidence of any motive for that officer to falsely accuse Plaintiff of storing contraband in his cell, nor is there a reason for Defendant Ter Bush to doubt the veracity of the inmate misbehavior report. Furthermore, Ter Bush also relied on Plaintiff's testimony in which Plaintiff attempted to justify his possession of the unauthorized documents. Thus, Ter Bush relied on "some evidence" to support his findings and he provided Plaintiff with a written disposition, which stated that he was relying on the inmate misbehavior report and Reed's testimony as evidence of Plaintiff's misconduct. Therefore, the Court recommends **dismissing** Plaintiff's claim that he was denied procedural due process at his Tier III disciplinary hearing.

### D. Pre-Confinement SHU

Plaintiff also claims that Defendant Ter Bush's failure to "subtract[]" the days he spent in pre-hearing confinement from his six month SHU sentence was a "[]violation of due process of law[.]"[9] Third Am. Compl. at ¶ 112. The Second Circuit has held that "administrative confinement of a prison inmate is not restricted by the Fourteenth Amendment's Due Process Clause unless the state has created a liberty interest from such confinement." *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994)

---

[9] The Court finds it unnecessary to address Defendants' other legal arguments as we find that Plaintiff is not raising a due process challenge to his placement in pre-hearing SHU confinement, and he acknowledges that Tier III penalties for inmate infractions do not have a maximum outer limit. Dkt. No. 82, Third Am. Compl., at ¶ 111; Dkt. No. 98-4, Ex. B, Benji Reed Dep., dated May 5, 2014, at p. 38.

(citing *Gittens v. LeFevre*, 891 F.2d 38, 40 (2d Cir. 1989). However, "New York law does not require pre-hearing administrative time served to be credited to a disciplinary sentence." *Nowlin v. Selsky*, 1992 WL 196782, at *3 (S.D.N.Y. Aug. 5, 1992); *Mastropietro v. New York State Dep't of Corr.*, 862 N.Y.S.2d 131 (App. Div. 3d Dep't 2008) ("[T]here is no authority for petitioner's assertion that he should have received credit toward his administrative penalty for time spent in confinement before the hearing.") (citation omitted). Because state law does not compel prison officials to deduct the time spent in pre-hearing confinement from a plaintiff's SHU sentence, Plaintiff does not have a cognizable claim for relief. Thus, the Court recommends **dismissing** this claim.

### E. Denial of Access to the Courts[10]

It is well established that "prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). That right "is infringed when prison officials interfere with a prisoner's preparation of legal documents." *Thomas v. Egan*, 1 F. App'x 52, 54 (2d Cir. 2001) (citing *Lewis v. Casey*, 518 U.S. 343, 350 (1996). In order to state a claim for denial of access to the courts, the plaintiff must allege that the defendant caused actual injury, *i.e.*, the defendant took or was

---

[10] It should be noted that Plaintiff's claim that Defendant Hetcher intentionally destroyed or lost his legal papers was previously dismissed with prejudice as New York has an adequate post-deprivation remedy for the loss of personal property. Dkt. No. 18, Mem.-Dec. & Order, dated Apr. 10, 2012, at p. 6. Inasmuch as this constitutes law of the case, Plaintiff's Third and Fifth Count are recommended to be dismissed.

responsible for actions that hindered plaintiff's efforts to pursue a non-frivolous, meritorious legal claim. *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citing *Lewis v. Casey*, 518 U.S. at 351); *Webster v. Fischer*, 694 F. Supp. 2d 163, 193 (N.D.N.Y.) *aff'd*, 398 F. App'x 683 (2d Cir. 2010). A plaintiff must also "demonstrat[e] that defendants deliberately and maliciously interfered with his access to the courts, and that such conduct materially prejudiced a legal action he sought to pursue." *Smith v. O'Connor*, 901 F. Supp. 644, 649 (S.D.N.Y. 1995); *see also Morello v. James*, 810 F.2d 344, 347 (2d Cir. 1987).

Here, Plaintiff fails to demonstrate that he suffered an actual injury from the confiscation of UCC materials, and possibly drafts of legal documents, from his cell. Plaintiff does not outline how a legitimate, non-frivolous legal claim was frustrated; but, more significantly, Plaintiff's legal claim is frivolous. For instance, Plaintiff argues that the criminal trial court judge lacked personal jurisdiction over him, and thus had no authority to sentence him, because "he never forfeited or contracted any of his right to republican form of government. It was never established that the Plaintiff personally participated in nor contributed to the American experiment in democracy[.]" Reed Decl. at ¶ 80. As such arguments are patently frivolous, the Court recommends **granting** Defendants' Motion for Summary Judgment with respect to Plaintiff's First Amendment denial of access to courts claim.

## F. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment states that no person shall be denied "the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause mandates state actors to treat similarly situated people alike. *See Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (cited in *Verdal v. Frantz*, 2002 WL 31309175, at *3 n.5 (N.D.N.Y. July 31, 2002)). To state an equal protection claim, a claimant "must prove purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (quoted in *Verdal v. Frantz*). To do so, it is imperative that a plaintiff demonstrate that similarly situated persons have been treated differently. *Gagliardi v. Vill. of Pawling,* 18 F.3d 188, 193 (2d Cir. 1994) (citing to *Cleburne v. Cleburne Living Ctr.*).

On the other hand, a "class of one" equal protection claim requires the claimant to demonstrate that they share an "extremely high degree of similarity" with the "persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citations omitted). Further, the claimant must show that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.

*Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) (citations omitted) (partially abrogated on other grounds by *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008)).

Here, Plaintiff fails to allege or provide any facts indicating that he had been treated differently from any other person or group during his confinement at Eastern. Thus, the Court recommends **dismissing** Plaintiff's equal protection claim.

Because the Court finds that no cause of action has been stated within the Third Amended Complaint, the Court need not address Defendants' qualified immunity or Eleventh Amendment Immunity defense.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 98) be **GRANTED in its entirety** and the case be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: April 8, 2015
	Albany, New York

Randolph F. Treece
U.S. Magistrate Judge